## Minier *against* Saltmarsh.

In a proceeding before two justices of the peace to obtain possession of land purchased at a sheriff's sale, the defence and the form of making it, which the act of assembly requires of a tenant to entitle him to a trial by jury in the court of common pleas, sufficiently puts the case to issue; and it is not error to try the cause without any other issue.

If a tenant in possession claiming to hold against a purchaser at a sheriff's sale, has had notice as terre-tenant upon a *scire facias* to revive the judgment upon which the land was sold, it estops him from setting up a title in himself prior to the date of the judgment.

ERROR to the common pleas of *Bradford* county.

Dalanson Saltmarsh against Elias Minier and George Minier. On the 9th of April 1818, E. Overton obtained judgment against Daniel Minier. In 1827, a *scire facias* was issued against the administrators of D. Minier to revive the same, which was served upon the defendants, and upon Elias Minier and George Minier, terre-tenants, upon which judgment was rendered. In 1832, another *scire facias* was issued against the defendants and terre-tenants, to which the terre-tenants appeared and pleaded payment with leave. The cause was tried and verdict for the plaintiff, upon which execution issued; and the land was sold to Dalanson Saltmarsh the plaintiff, who instituted a proceeding before two justices of the peace to obtain possession. Elias Minier appeared before the justices and made the necessary affidavit required by the act of assembly to entitle him to a trial in the common pleas, and the proceedings were accordingly transmitted. When the cause came on for trial the defendant objected to proceed, on the ground that the cause was not at issue; but the court (Herrick, President) was of opinion that the cause required no other or more formal issue than the proceedings before the justices. This was the subject of the first error assigned.

Upon the trial of the cause, the defendant offered in evidence a deed from Daniel Minier to him, dated the 17th of March 1817, (prior to the judgment on which the land was sold to the plaintiff,) accompanied by parol evidence that he went into possession of the land at that time, and has been in possession ever since. This evidence was objected to, on the ground that the appearance of Elias Minier to the

*scire facias,* and the judgment against him, was conclusive. The court was of this opinion, and rejected the evidence, which was the subject of the second bill of exceptions.

*Cunningham,* for plaintiff in error, cited Hines *v.* Jacobs, 1 *Penns. Rep.* 158; Coyle *v.* Reynolds, 7 *Serg. & Rawle* 328 ; Chahoon *v.* Hollenbach, 16 *Serg. & Rawle* 432.

*Williston,* for defendant in error, cited Heller *v.* Jones, 4 *Binn.* 61 ; Kichner *v.* Dengler, 1 *Watts* 424; Kneas *v.* Hollenbach, 1 *Serg. & Rawle* 548.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is, that the court below compelled the plaintiff in error, who was the defendant there, to go on to trial without any issue being joined, though he expressly objected to it. It does appear to us that the ground of this objection cannot be said to exist in point of fact: for there does appear upon the record all that the legislature intended should constitute the issue in such a proceeding as this, which is wholly of statutory origin. The proceedings were commenced in the manner and form prescribed by the act of assembly before two justices of the peace, and carried on until the plaintiff in error appeared as a defendant there, and put in and filed upon oath a declaration of his right to hold the land in opposition to the claim of the plaintiff; which he had previously set out upon the record made of the proceedings therein by the justices of the peace. The opposing claims of the parties to the possession of the land in question, being thus spread upon the record of the proceedings had before the justices, formed the only issue, as I apprehend, that seems to be contemplated by the act; and certainly, quite as well suited to bring to view the real point or matter in controversy between the parties as the issues directed to be formed in certain other cases by the act of 1806, regulating arbitrations and proceedings in courts. Under this act, the plaintiff in certain specified cases files, after suit brought, a statement of his claim, setting forth the nature of it and the amount; and the defendant files a statement of his defence, if he has any ; and upon this the parties go to trial. All this has been done by the parties in the present case. It was done very fully before the justices of the peace, and removed with the other proceedings into the court of common pleas at the instance of the plaintiff in error, who entered into a recognizance with bail to prosecute his claim there with effect. This claim he filed under oath before the justices of the peace; he was not at liberty, in the court of common pleas, to depart from it and to set up another: so, that the only defence he was at liberty to make against the plaintiff's claim, which was also specifically set forth, was fully set out upon the record. The counter-statements of the parties thus made of their opposing claims to the possession of the land,

[Minier v. Saltmarsh.]

formed a sufficient issue to justify the court in directing the jury to be sworn as they did.

The remaining error is an exception to the opinion of the court, in rejecting a deed of conveyance in fee for the land in question, from Daniel Minier and his wife to Elias Minier the plaintiff in error, bearing date the 17th of March 1817, and acknowledged the 12th of September 1820; together with evidence showing that the plaintiff in error had been in the possession of the land from the date of the deed; and that notice had been given at the time of the sheriff's sale of the land to the defendant in error of the plaintiff in error's claim to it. Daniel Minier, the grantor in the deed to the plaintiff in error, was the defendant in the original judgment, upon which the sheriff's sale was founded. The plaintiff in error was served, as tenant of the land, with a writ of *scire facias*, sued out upon the judgment against the administrators of Daniel Minier, he having died some years after the judgment was first entered. The *scire facias* was served also upon the administrators, and so returned by the sheriff; whereupon, it appears that judgment was given for the plaintiff in the *scire facias*, for want of appearance and without any defence being made. Upon this judgment a *fieri facias* was issued to September term of the court 1828, by virtue whereof the sheriff seised and took in execution the land in dispute, which was condemned to sale. Here the proceedings on the execution rested till the 15th of December 1832. During this interval another writ of *scire facias* was sued out upon the judgment against the administrators of Daniel Minier and the plaintiff in error as one of the terre-tenants; and after being returned served upon them by the sheriff, judgment was taken against the administrators by default for want of their appearance; and upon trial of an issue joined on the plea of payment, put in by the plaintiff in error, who appeared to the writ, a verdict and judgment were rendered against him as terre-tenant in favour of the plaintiff on the 12th of December 1832. On the third day following, the inquisition returned on the *fieri facias* condemning the land to sale, for some cause or other, was set aside by the court; and on the 14th of January following, a second inquest was held by the sheriff under the same *fieri facias*, and the land condemned again to sale. After this, upon a writ of *venditioni exponas* sued out, the land was sold by the sheriff to the defendant in error, and a deed of conveyance accordingly made and acknowledged in due form of law.

These are the facts of the case, and the only question presented by the exception is, whether the plaintiff in error was not estopped, by the judgment against him on the *scire facias*, from giving the deed and other matters mentioned in the bill of exception, in evidence. For if he was, the court were clearly right in rejecting the evidence; otherwise it ought to have been received and gone to the jury. We however, are of opinion, that the court were right, and that their decision is sustained by both reason and authority.

[Minier v. Saltmarsh.]

When a terre-tenant is served with a *scire facias*, sued out upon a judgment previously obtained, it is to be considered as a notice or intimation given to him, that the plaintiff therein, claims that the land, of which he is tenant, is bound by the judgment.   In Proctor *v.* Johnson, 1 *Lord Raym.* 670, Lord Holt says, " the reason of the *scire facias* is, because the land is bound by the recovery and makes a title to the recoverer." The plaintiff in error, upon being served with the *scire facias*, was therefore bound to know that the great object of serving him with the writ, was to let him know, that the plaintiff therein considered the land held by him bound by his judgment and liable to be taken in execution for the purpose of satisfying it, and if he knew and had any thing to say, why it should not be so, to appear and make it known.   Indeed, it was impossible for him to mistake the design of serving upon him the *scire facias*. He has also given evidence himself, that he knew he had a right to appear in court and defend against the claim of the plaintiff in the *scire facias* by his actually appearing and doing so.   He, however, chose then to place his defence upon the plea of payment, which was found against him, instead of setting up the defence that he offered in the court below.   This latter defence would have been perfectly available in the *scire facias* if he could have established it, and there is strong reason, therefore, to conclude, that if he could have maintained it at that time, he would have done so, in place of relying upon a defence that he was unable to support.   Although the deed which the plaintiff in error offered to read in evidence, bears date a year anterior to the date of the judgment, yet it does not necessarily follow that it was executed at that time.   Had it been set up as a defence in the *scire facias*, the plaintiff might have avoided it, for aught we know, by showing it was ante-dated, and that it was in fact executed and delivered after the rendition of the judgment; or that the deed, though made before the date of the judgment, was made for the purpose of defrauding the creditors of the grantor, of whom the plaintiff was one.   The plaintiff in error then having had it in his power to have tested the validity of his deed in the *scire facias* and to have had the question settled, whether he was entitled to hold the land discharged from the judgment or not, it was not only expedient, but a duty which he owed to himself and all concerned, to have done so.   That the debt owing to the plaintiff in the judgment was just, cannot be questioned; and if the land were really liable to the payment of it, it was surely very important for the plaintiff in the judgment to have this known and established before a sale should be made of the land for that purpose; otherwise, being sold without first having the claim of the plaintiff in error to it proved to be invalid, the land might not have been sold for one-half the amount of the judgment, though its real value, free of dispute, might have been more than equal to it.   Beside, it has ever been an object of the first desire, in making judicial sales of land, to have the lands to pass into the hands of the purchasers, as free from diffi-

[Minier v. Saltmarsh.]

culties and objections on account of incumbrances or doubts in regard to the goodness of the title as possible. And, so far as the interests of the terre-tenants are concerned, it cannot prejudice their rights, if they have any, to afford them an opportunity to establish them before the sales. The inconvenience or expense attending it cannot be greater to them than it would be to do so in ejectments brought by the purchasers of the lands at the sales. It would, therefore, appear to be nothing more than just and reasonable that the terre-tenant should be held bound, upon being served with the *scire facias*, to make known his claim to the court, against the judgment, if he has any, or else be precluded from setting it up thereafter. But it is perhaps no less important that he should be bound to do so from considerations of policy as well as justice, in order to prevent as far as possible, the practice and perpetration of fraud; because, if it be left to his option to show his title as a defence to the *scire facias*, or to bring it forward against the purchaser at sheriff's sale, in a proceeding commenced by him afterwards, to recover the possession of the land, it is perfectly manifest, that with nothing more than the mere colour or show of a title, or with one that has been conceived and hatched in fraud, he may, by giving notice and making a show of it at the sheriff's sale, deter persons from bidding for the land and have a friend provided, who buys it in for him, for some trifling sum, little more than a nominal price; so that the permitting him to defend at his pleasure, either in the writ of *scire facias*, or in the action brought afterwards by the purchaser at the sheriff's sale to recover the possession of the land, may be putting it in his power to reap the benefit of a most fraudulent device, and to accomplish almost all that he could have wished for, or anticipated; but compel him to try his title or claim, if he has any, on the *scire facias*, or else to abandon it forever, and by doing so, it is evident, that not only the interest of debtors as well as creditors, will be promoted, but the repose of the whole community will in some measure be preserved by it.

Having shown, as is believed, that the decision of the court, in rejecting the evidence offered, is sustained by the principles of reason and sound policy, it remains to refer to some of the authorities on the subject, which go to sustain it most fully. In Gilbert *v.* Bragg, decided in 1655, and cited by Lord Holt in Trevivan *v.* Lawrence, 6 *Mod.* 257, where a judgment in debt was obtained against a tenant in tail, who died, and afterwards a *scire facias* was sued out thereon against his issue in tail, who was returned warned, but made default, whereupon judgment was rendered against him, though the lands in tail were not liable, yet he was held to be concluded for ever. And so he would have been, according to Lord Holt, if he had pleaded any other matter, and it had been found against him. Trevivan *v.* Lawrence, 1 *Salk.* 276. It was also held that the judgment upon the *scire facias* was a sufficient title in ejectment brought to recover the actual possession of the land, taken in execution under it, and that the first judgment need not be given in evidence. *Ibid.* Like-

v.—2 N

wise, in Day *v.* Guilford, 1 *Lev.* 41; *S. C. T. Raym.* 19; 1 *Sid* 54; 1 *Keb.* 112, 141, it was ruled that if a *scire facias* be brought against the issue vested with a remainder in tail, upon a recognizance in debt, acknowledged by the ancestor, who was tenant for life only, and the issue in tail, being warned, makes default, he shall not be permitted afterwards to say that he was tenant in tail and therefore his estate in the land was not bound by the recognizance.     The principle of these cases is recognized and approved by Lord Holt, in Trevivan *v.* Lawrence, 1 *Salk.* 276; and it is impossible to avoid discovering how directly they bear upon and support the case before us; ruling in fact the very point presented in it; that if the terre-tenant upon being served with a *scire facias*, either makes default or appears and pleads any matter whatever, upon which judgment is given against him, he will be concluded for ever afterwards from setting up any defence that he might have made in the *scire facias.* ` And again in Lady Dowager Lindsey *v.* Lord Lindsey, 1 *Salk.* 291, where in ejectment the plaintiff showed a title by a recovery in dower, by producing in evidence, the record of the judgment, the *habere facias seisinam, &c.* and the defendant appeared to prove a term of ninety-nine subsisting, and that it was prior to the title in dower, but it was disallowed; because, as is there said, the proper time for the defendant to have pleaded it was in the writ of dower, but not having done so he has slipped his opportunity.     Other English cases might be cited, but it is unnecessary, as they all form but one uniform current of authority, without the slightest contradiction or inconsistency. We have, however, decisions of our own to the same effect, some of which I will notice.     Kichner *v.* Dengler, 1 *Watts,* 424.     It was an action of ejectment, in which the plaintiff claimed title to the land in dispute, under a sale made to him by the sheriff, by virtue of an execution issued upon a judgment, whereon a *scire facias* had been sued out subsequently to the sheriff's sale and been served upon the ancestor or father of the defendants in the ejectment, as the terre-tenant; he made default and the judgment not being fully satisfied, a judgment of revival was entered for the plaintiff; and held, that the heirs of the terre-tenants, thus served with the *scire facias*, were estopped from showing in the ejectment, that they, as his heirs, claimed the land under a deed of conveyance, made to him, for a valuable consideration by the defendant in the judgment and execution, under which the land was sold by the sheriff, prior to the *scire facias* being sued out, and at a time when the judgment was no lien upon the land. In Heller *v.* Jones, 4 *Binn.* 61, where a judgment creditor having bought the defendant's lands at sheriff's sale and conveyed them to A., appeared to a writ of *scire facias* sued out by another judgment creditor upon his judgment against the same defendant, and gave notice, that he should insist upon fraud and combination between the plaintiff and defendant, as a defence to the *scire facias*, but did not attend at the trial, nor give any evidence; when a verdict and judgment were of course entered for the plaintiff.     A. also had notice of

the *scire facias* and the proceeding upon it, but having a bond of indemnity from his vendor, paid no attention thereto: And held, that neither A. nor the judgment creditor who conveyed to him, nor the representatives of the latter, could controvert the judgment, whereon the *fieri facias* was sued out, upon the ground of fraud. And in Nace *v.* Hollenback, 1 *Serg. & Rawle* 540, in an action of ejectment to recover land purchased at a sheriff's sale made upon a judgment in a *scire facias* on a mortgage, it was ruled, that the terre-tenant could not give in evidence *any matters* which might have been shown in the *scire facias,* unless there has been fraud or collusion between the mortgagor and mortgagee, or the terre-tenant was not a party to the *scire facias.* And likewise in Hines *v.* Jacobs, 1 *Penns. Rep.* 152, where a suit was brought against the personal representatives of a deceased debtor, with notice to the terre-tenants in possession of the land upon which it was alleged the debt was a lien, who appeared and made defence, it was held, that they were concluded by the verdict and judgment given in favour of the plaintiff: and that, too, notwithstanding they might not *in fact* have put in issue the question of lien. The chief justice in delivering the opinion of the court says, "where the terre-tenant has actually appeared and *had an opportunity to make a full defence,* even though he may not have availed himself of it, he is concluded to every intent." And in the sequel, he again says, "what is not contested at the proper time is *conceded.* And even had the terre-tenants here been called in prematurely, still they availed themselves of the occasion, and had as fair an opportunity to make a full defence, as if the proper time to do so had not been anticipated. They came to show that the land was not debtor; and this they were competent to do, either by disproving the debt or nullifying its lien; each of which was open to them as available points of defence; and there is no reason, why they should be suffered to use but one, and reserve the other." Now all this is literally applicable to the present case, from which, as well as all the other cases on the subject, it appears that the plaintiff in error here has let slip the proper time for making the defence which he attempted to set up in the court below.

It may be, however, that some embarrassment will occasionally be felt arising from our very loose and slovenly practice in not setting forth in writing, every thing that is done in a legal or judicial course of proceeding, so as to show clearly and distinctly afterwards, as well as then, all that was done, or even intended so to be. From neglect, want of proper attention or some other cause, I am inclined to believe that writs of *scire facias* intended to be served upon terre-tenants, are frequently sued out and served upon them, without any direction contained therein to that effect. Now in every case, where there is one or more terre-tenants, upon whom it is intended to serve the *scire facias* that is about to be sued out, for instance, if it be upon a judgment previously obtained against A. B., there ought to be introduced into the writ, immediately after that part, which

[Minier v. Saltmarsh.]

requires the sheriff, " by good and lawful men of his bailiwick to make known to the said A. B.," the following clause, " and also to the tenants of the lands and tenements, which were of the said A. B., at the time of the judgment aforesaid, &c.;" or the terre-tenants may be named, *Fitzh. N. B.* 597; Proctor *v.* Johnson, 1 *Lord Raym.* 670; 2 *Salk.* 600, but the better and constant form now is, to issue the writ against the terre-tenants generally without naming them; for, if the plaintiff undertake to name them, it is said, he must name them all, and if he do not, those who are named may plead in abatement. Berisford *v.* Cole, *Com.* 282; Jefferson *v.* Morton, 2 *Saund.* 7, *note* 4 *per Sergt. Williams.* It is also not only requisite, that the sheriff, in his return of the service of the writ, should name the terre-tenants upon whom he shall have served it, but he ought also to describe the land, so as to render it capable of being identified of which they, respectively, are tenants, as may be seen in Jefferson *v.* Morton, 2 *Saund.* 7 *d,* 7 *e,* and 8 *a.* In this latter particular, especially, we are altogether deficient in our practice: for, though the names of the tenants are returned by the sheriff, yet he rarely, if ever, returns a description of the lands and tenements which they hold as such: Hence, it does not appear upon the record, what lands are intended to be charged; and the terre-tenants may often hold other lands beside those which are chargeable, upon which it is not pretended by the plaintiff that the debt is charged. It is, therefore, very desirable that the practice in this respect should be reformed and amended, so that not only the tenants may be apprised of the specific lands they are called on to defend, but in case of judgment being rendered against them, that it may appear upon record what lands holden by them, respectively, are bound by it.

    The judgment is affirmed,